Opinion issued February 26, 2009












In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00604-CR
NO. 01-07-00605-CR
NO. 01-07-00606-CR




NASROLLAH HANJANI ALIZADEH, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause Nos. 39,195; 39,194; and 40,147 




MEMORANDUM OPINION
          A jury convicted appellant, Nasrollah Hanjani Alizadeh, of indecency with a
child (trial court cause number 39,195; appellate cause number 01-07-00604-CR) and
two counts of aggravated sexual assault of a child (trial court cause numbers 39,194
and 40,147; appellate cause numbers 01-07-00605-CR and 01-07-00606-CR). The
jury assessed punishment at 11 years imprisonment for indecency with a child, and
29 years and 35 years imprisonment on each of the aggravated sexual assault of a
child convictions. The trial court ordered the sentences in cause numbers 39,194 and
39,135 (which arose from the same incident) to run concurrently; the trial court
further ordered the sentences in 39,195 and 40,147 to run consecutively.
          On appeal, appellant argues that the trial court abused its discretion in
admitting certain hearsay statements made by the child-complainant and a statement
that appellant alleges bolstered the child-complainant’s credibility.
          We affirm.
                    Background
          As a young child, Jane


 and her family became friends with appellant and his
daughter, who were their neighbors. Appellant was divorced from his daughter’s
mother, and he had visitation with his daughter every other weekend and on school
holidays and vacations. Jane’s family moved to another neighborhood when Jane was
about eight years old. Jane continued to visit appellant’s daughter, and Jane and
appellant’s daughter sometimes slept at each other’s homes. Jane also testified that
appellant would take them on outings and buy them gifts.
          On Thanksgiving Day in 2003, when Jane was about 11 years old, appellant
and his daughter went to Jane’s house, where Jane’s father was frying turkeys for
friends and neighbors. At some point, Jane went to appellant’s house to spend the
night with his daughter. Jane testified that she helped appellant and his daughter
pitch a tent in the backyard where the two girls were to sleep. After appellant’s
daughter fell asleep, Jane left the tent, stood by the fence, and peered through the slats
at the neighbor’s holiday lights. While standing there, appellant approached her, put
his arm around her, and then fondled her under her shirt and down her pants, touching
her breast and vagina with his finger. Jane testified that she felt uncomfortable and
it hurt. She said she tugged away and went into the house. While hiding in the
bathroom, she called home. Her mother testified that Jane was crying hysterically,
complaining of a stomach ache, and asking for a ride home. When Jane’s mother
arrived at appellant’s house, Jane quickly climbed into the back seat, while her
mother and appellant had a brief conversation about Jane’s alleged stomach ache. As
her mother drove away, Jane told her mother that appellant had touched her.
          The next day, Jane’s parents took her to the police station to report the assault
and then to the Children’s Advocacy Center, where Jane spoke with a forensic
interviewer. Jane’s parents then engaged a licensed clinical social worker, Susan
Packwood, to treat Jane for the emotional disturbances caused by the sexual assault. 
At trial, Jane testified that she saw Packwood every week and that she liked talking
to her, although Jane did not know exactly who she was. On direct examination, Jane
testified:
          Q:      Now, had there been other times when [appellant] had touched
you?
          A:      Yes.
          Q:      Did you ever tell anybody about those times?
          A:      Yes.
          Q:      And who did you tell?
          A:      I don’t know if it’s Suzy or Susan, I don’t know her name,
Packwood.
          . . . .
          Q:      Do you remember—all right. So, after you talked to [the forensic
interviewer], you said you met someone named Suzy or Susan?
          A:      Yes.
          Q:      And who was that?
          A:      I don’t know.
          Q:      Did you talk to her just one time or more than one time?
          A:      More than one time.
          Q:      And she’s somebody that you went to see and talked to regularly
about what had happened?
          A:      Yeah. I went weekly to her.

          On cross-examination, Jane said that she told Packwood about some of the
things that had happened, but she did not remember if she gave Packwood details.
Jane testified that she spoke to Packwood mostly about her feelings.
          Packwood testified that she was told that Jane had been sexually abused. 
Packwood said that after meeting once with Jane’s parents and twice with Jane, she
diagnosed Jane with post-traumatic stress disorder (“PTSD”), and she began a course
of therapy for that condition. Packwood’s treatment goals were to help Jane cope
with her emotions and anxiety and learn coping skills. She testified that her role was
not to investigate. Packwood testified that Jane told her that appellant had been the
perpetrator.
          Q:      Without saying what they were, Ms. Packwood, did [Jane] give
you specific details, or did she tell more vaguely and broadly about
things that had happened to her?
          A:      Specific details.
          Q:      Was that about every incident, or just a couple of incidents?
          A:      A couple of incidents.
          Q:      Did she ever talk to you about—did she tell you who the
perpetrator was?
          A:      Yes.
          Q:      Who did she say that was?
          A:      Nasi, her best friend’s father.
In the hearing outside the presence of the jury, Packwood had testified that while it
is optimal for a child to reveal specific information and to identify the perpetrator, it
is not always necessary for treatment.
          On cross-examination, appellant’s trial counsel questioned Packwood about
Jane’s veracity and whether or not Packwood confirmed the abuse before making her
diagnosis.
          Q:      When she came in there, you were assuming she’s telling you the
truth, right?
          A:      Because she’s been at the advocacy center.
          Q:      You assumed when she came in there she was telling you the truth
about everything?
          A:      Well, it’s a little more complicated than that.
          Q:      You assumed that she might be lying?
          A:      No, I use— 
          Q:      Did you do any testing on her?
          A:      No, I didn’t.
          . . . .
          Q:      Did you go to the interview? There was some videotapes made of
her, two of them. Did you go look at either of those?
          A:      No, but I did talk with the Children’s Advocacy Center to validate
that she had been interviewed there and that they validated
sexual— 
          Q:      Excuse me, go ahead— 
          A:      —they validated sexual abuse, so I knew— 
          Q:      What do you mean, validated sexual abuse?
          A:      Well, CPS—or the Children’s Advocacy Center says, yes, they
believe it happened, or no, they don’t believe it happened. When
I hear the information, then I don’t have to interview the child
again about that.

          Although Packwood agreed that some children do lie about sexual abuse, she
did not find any emotional or mental disorders that could have affected Jane’s
reporting.
          On redirect examination, the State asked Packwood, “[Appellant’s attorney]
asked you if you assumed that [Jane] was telling the truth. Did she ever exhibit any
signs or indicators to you that she was fabricating or exaggerating abuse?” Appellant
objected that “whether someone’s telling the truth is not admissible.” The State
argued that appellant had opened the door to this question during cross-examination,
and the trial court overruled appellant’s objection.
          The State asked its question again, but changed the wording:
          Q:      You said that you didn’t just take it for granted that [Jane] was
telling you the truth. You said you took other things into account. 
My question is: Did [Jane] ever exhibit any indicators, did you
receive information from other sources that suggested she was
fabricating or exaggerating what had happened to her?
 
          A:      No. Neither did she, nor any other information that I got make me
feel ever in any way that she was fabricating or exaggerating in
any way. She was under reporting rather than over.

Appellant did not reurge his objection to the newly phrased question, nor did he
object to the nonresponsive portion of Packwood’s answer.
          During her treatment, Jane told Packwood about other instances when, Jane
alleged, appellant touched her inappropriately or sexually assaulted her. As a result
of these revelations, Jane returned to the Children’s Advocacy Center for a second
interview. During the second interview, Jane described an incident that occurred the
summer before the Thanksgiving incident. Jane said that appellant had entered the
guest room one night when she and her sister were staying at appellant’s house. Jane
testified that she was awake although her sister was asleep. Jane said she pretended
to be asleep when appellant entered the room. She said that appellant kneeled beside
the bed, moved her legs, removed her pants and underwear, and put his mouth on her
vagina.
          Jennifer Lemke was the forensic interviewer from the Children’s Advocacy
Center, who interviewed Jane. She testified about what Jane had told her in the
second interview, and her testimony corroborated Jane’s trial testimony. Lemke
testified that Jane told her that appellant had “put his mouth on her private” and
“lick[ed] her.”
          Appellant was charged with five indictments alleging indecency with a child
and aggravated sexual assault. His daughter’s trial testimony refuted some of the
allegations against him, and the jury acquitted him on two charges of indecency with
a child. However, appellant was convicted of indecency with a child and aggravated
sexual assault based on the Thanksgiving incident and of aggravated sexual assault
based on the guest-room incident. In two issues, appellant challenges the admission
of testimony from the licensed, clinical social worker.
Hearsay
          Appellant’s first issue alleges that the trial court abused its discretion by
allowing the licensed, clinical social worker who treated Jane to testify about what
Jane told her. Appellant contends that these statements were hearsay and not
admissible pursuant to the medical diagnosis exception to the hearsay rule because
the social worker was not a physician providing medical care.
Standard of Review
          We review a trial court’s decision to admit or exclude evidence under an
abuse-of-discretion standard. Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App.
2003); Roberts v. State, 29 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.] 2000,
pet. ref’d). We will not reverse a trial court’s decision to admit or exclude evidence
unless the record shows a clear abuse of discretion. Zuliani, 97 S.W.3d at 595;
Roberts, 29 S.W.3d at 600. An abuse of discretion occurs only when the trial court’s
decision was so clearly wrong as to lie outside that zone within which reasonable
persons might disagree. Zuliani, 97 S.W.3d at 595; Roberts, 29 S.W.3d at 600.
Hearsay and the Medical-Diagnosis-and-Treatment Exception
          Hearsay is an out-of-court statement offered to prove the truth of the matter
asserted. Tex. R. Evid. 801(d). Ordinarily, hearsay is inadmissible. Tex. R. Evid.
802. However, “[s]tatements made for purposes of medical diagnosis or treatment
and describing medical history, or past or present symptoms, pain, or sensations, or
the inception or general character of the cause or external source thereof insofar as
reasonably pertinent to diagnosis or treatment” are exceptions to the hearsay rule. 
Tex. R. Evid. 803(4). 
          Rule 803(4) is premised on the declarant’s strong and selfish motive to tell the
truth in order to receive proper medical diagnosis or treatment. Taylor v. State, 268
S.W.3d 571, 583 (Tex. Crim. App. 2008). In Taylor, the Court of Criminal Appeals
observed that a “statement made for the purpose of facilitating a child-declarant’s
own mental health may carry the same self-interested motive as a statement made to
facilitate the declarant’s physical well-being.” Id. at 588. The Court of Criminal
Appeals, therefore, rejected the idea that the admissibility of such statements
depended upon “whether or not the mental-health professional is, strictly speaking,
a member of the ‘medical profession.’” Id. at 588. Rather, the proponent of the
evidence must show that: (1) the out-of-court declarant was aware that the statements
were made for the purpose of medical diagnosis or treatment and that proper
diagnosis or treatment depends upon the veracity of such statements; and (2) the
particular statement proffered is pertinent to treatment or diagnosis. Id. at 589–91. 
Analysis
          The trial court held a hearing outside the presence of the jury to determine the
social worker’s qualifications and the admissibility of certain hearsay statements that
Jane made to her for the purpose of diagnosis and during her course of treatment. The
trial court ruled that only the statements that Jane made to the social worker before
the social worker diagnosed Jane with PTSD were admissible. 
          Appellant does not clearly identify which statements he finds objectionable, but
a review of the record reveals that only Packwood’s testimony that Jane told her
appellant had been the perpetrator could reasonably be included in his objection. 
Although Packwood testified that Jane told her specific details about what happened,
Packwood did not testify about those details. Here, Jane’s testimony does not show
that she understood that her statements to Packwood identifying appellant as the
perpetrator were for the purpose of medical diagnosis or treatment. To the contrary,
Jane did not know who Packwood was. Furthermore, Packwood’s testimony did not
show that she explained to Jane what her role was or that Jane’s statements were for
the purpose of diagnosis or treatment. On this record, we conclude that the State did
not satisfy the first prong of Taylor. See Taylor, 268 S.W.3d at 591.
          Because this is nonconstitutional error, we will reverse only if this error had
a substantial and injurious effect or influence on the jury’s verdict. See Tex. R. App.
P. 44.2(b); Taylor, 268 S.W.3d at 592 n.105 (citing King v. State, 953 S.W.2d 266,
271 (Tex. Crim. App. 1997)). “We should not overturn the conviction if we have fair
assurance from an examination of the record as a whole that the error did not
influence the jury, or had but slight effect.” Taylor, 268 S.W.3d at 592 (citing
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). However, the
improper admission of evidence is not reversible error if the same or similar evidence
is admitted without objection at another point in the trial. Leday v. State, 983 S.W.2d
713, 717 (Tex. Crim. App. 1998); see Duncan v. State, 95 S.W.3d 669, 672 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d) (holding improper admission of outcry
testimony was harmless error because similar testimony was admitted through
complainant, pediatrician, and medical records).
          Jane testified without objection that appellant had sexually assaulted her. 
Jane’s mother testified without objection that Jane told her that appellant put his hand
in her pants and up her shirt. Jennifer Lemke, the forensic interviewer from the
Children’s Advocacy Center, testified without objection that Jane told her that
appellant had “put his mouth on her private” and “lick[ed] her.” Because the same
or similar evidence was admitted without objection at other points in the trial, we
conclude the trial court’s error in admitting Packwood’s hearsay testimony was
harmless. See Taylor, 268 S.W.3d at 593 (holding that error in admitting
complainant’s statement identifying appellant to counselor was harmless). We
overrule appellant’s first issue.
Bolstering
          In his second issue, appellant challenges the trial court’s admission of
Packwood’s testimony regarding Jane’s veracity. We review a trial court’s decision
allowing an expert opinion for an abuse of discretion. Gallo v. State, 239 S.W.3d
757, 765 (Tex. Crim. App. 2007).
Preservation of Error
          In order to preserve a complaint for appellate review, a party must have
presented to the trial court a timely request as well as an objection or motion
specifically stating the grounds for the desired ruling if not apparent from the context.
Tex. R. App. P. 33.1(a). A timely objection is one which is raised “as soon as the
ground of objection becomes apparent, that is, as soon as the defense knows or should
know that an error has occurred.” Johnson v. State, 878 S.W.2d 164, 167 (Tex. Crim.
App. 1994.) 
          In his brief, appellant challenges Packwood’s statement that she did not “feel
in any way that [Jane] was fabricating or exaggerating.” At trial, appellant neither
objected to this nonresponsive portion of Packwood’s answer nor asked the trial court
to strike it or instruct the jury to disregard it. Therefore, to the extent that appellant’s
second issue addresses Packwood’s nonresponsive comments, appellant’s issue is not
preserved.
          However, appellant made a timely and specific objection to the question asked
by the prosecutor inquiring whether Jane was fabricating her statements. The trial
court overruled that objection, and we must now determine whether the question
properly elicited expert testimony.
Expert Testimony
          Expert opinion testimony must be relevant and helpful to the jury. Tex. R.
Evid. 702; Schutz v. State, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997). “[E]xpert
testimony must aid—not supplant—the jury’s decision.” Schutz, 957 S.W.2d at 59. 
Ordinarily, a direct opinion about the truth of a child-complainant’s allegations does
not assist the jury. Id. (citing Yount v. State, 872 S.W.2d 706, 708 (Tex. Crim. App.
1993)). However, an expert may testify about behaviors that suggest the child’s
account was manipulated or the result of fantasy, but the expert may not offer an
opinion concluding whether or not the child had been manipulated or was telling the
truth. Schutz, 957 S.W.2d at 69–70.
A party may attack the credibility of a witness or other declarant by
offering the following kinds of manipulation evidence: (a) evidence that
the person is, in general, the kind of person who is easily manipulated,
(b) common signs or symptoms of manipulation and evidence that the
person displays some or all of these signs or symptoms, and (c) evidence
of third person acts or words designed to manipulate. The other party
may respond to such attacks with (a) evidence that the person is not, in
general, the kind of person who is easily manipulated, (b) common signs
or symptoms of manipulation and evidence that the person does not
display these signs or symptoms, and (c) evidence rebutting the
existence of third person acts or words of manipulation. A party may
respond to any of the first three categories with evidence from any of the
second three categories provided that the latter evidence is logically
relevant to rebut the former.
 
Id. at 70.
          Here, the prosecutor asked, “Did Jane ever exhibit any signs or indicators to
you that she was fabricating or exaggerating abuse?” Packwood never testified what
signs or indicators would suggest whether or not a child was fabricating or
exaggerating abuse. Instead of testifying generally about such indicators and
allowing the jury to arrive at its own conclusion, Packwood offered her opinion that
Jane had been telling the truth. 
          On appeal, the State argues that its question was proper to rehabilitate
Packwood after cross-examination or that appellant had opened the door to this
testimony during cross-examination. However, Packwood was not impeached on
cross-examination. Rather, Packwood’s testimony on cross-examination was
consistent with her earlier and subsequent testimony. In discussing when the door is
opened to certain opinion testimony, the Court of Criminal Appeals has noted,
“[M]erely asking questions designed to cast doubt upon a witness’ character for
truthfulness should not ordinarily be sufficient to open the door to evidence
supporting the truthfulness of specific allegations; favorable answers to such
questions must ordinarily be obtained in order to justify the introduction of such
specific testimony.” Schutz, 957 S.W.2d at 72. Here the appellant did not obtain
“favorable” answers on cross-examination. Therefore, we conclude that the trial
court abused its discretion by admitting this opinion testimony.
          This, too, is nonconstitutional error, and we will reverse only if this error had
a substantial and injurious effect or influence on the jury’s verdict. See Tex. R. App.
P. 44.2(b); Taylor, 268 S.W.3d at 592 n.105 (citing King, 953 S.W.2d at 271). As
noted earlier, the improper admission of evidence is not reversible error if the same
or similar evidence is admitted without objection at another point in the trial. Leday,
983 S.W.2d at 717; see Duncan, 95 S.W.3d at 672.
          Appellant argues that this was harmful error, but appellant’s trial attorney
elicited nearly identical testimony on cross-examination. On cross-examination,
Packwood testified that she believed Jane had been sexually abused because of the
information she had received from the Children’s Advocacy Center. Because similar
evidence was elicited by appellant’s trial counsel and admitted without objection, we
hold that the trial court’s error in admitting Packwood’s opinion testimony was
harmless. We overrule appellant’s second issue.
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 
 
 
                                                             Jim Sharp
                                                             Justice

Panel consists of Justices Taft, Bland, and Sharp.

Do not publish. Tex. R. App. P. 47.2(b).